**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF CONNECTICUT**

| | |
|---|---|
| MARIAH KENT, individually, and on behalf of all others similarly situated, <br>　　　　　　　　Plaintiff, <br> v. <br> CHARTER COMMUNICATIONS, INC. d/b/a SPECTRUM <br>　　　　　　　　Defendant. | **Case No. 3:26-cv-00850** <br><br> **CLASS ACTION COMPLAINT** <br><br><br> **[JURY TRIAL DEMANDED]** |

Plaintiff Mariah Kent ("Plaintiff"), by and through her undersigned counsel, on behalf of herself and a class of all other similarly situated persons, brings this Class Action Complaint against Charter Communications, Inc. d/b/a Spectrum ("Charter" or "Defendant"). Plaintiff's allegations are made based upon personal knowledge, her own acts, and upon information and belief and investigation of counsel, as to all other matters.

## I.　NATURE OF THE ACTION

1.　Plaintiff brings this action against Defendant for its failure to properly secure and safeguard highly valuable, protected, personally identifiable information and for its failure to comply with industry standards to protect information systems that contain and/or are utilized to transfer personally identifiable information ("PII"). Plaintiff has been, and continues to be, harmed as a result of Charter's failure to properly secure and safeguard its customers' highly valuable, protected PII including, *inter alia*, full names, email addresses, physical addresses, telephone numbers, account plan information, customer support ticket details, and Customer Proprietary Network Information ("CPNI"); and for its failure to comply with industry standards to protect information systems that contain PII.

2.　Defendant Charter Communications, Inc. is American telecommunications and mass media company headquartered in Stamford, Connecticut.

3.    Plaintiff and Class members were required to provide their PII to Defendant as a condition of receiving goods or services from Defendant in the regular course of Defendant's business activities.

4.    As such, Defendant stores a litany of highly sensitive PII about its current and former customers and employees.  Defendant lost control over that data when cybercriminals infiltrated its insufficiently protected computer systems in a data breach.

5.    Upon information and belief, Charter suffered a cybersecurity incident in or around April 2026 that resulted in unauthorized access to and exfiltration of customer data by the notorious online hacking and extortion group known as "ShinyHunters" (the "Data Breach").[1]

6.    The attack purportedly began on or about April 1, 2026, when ShinyHunters used a voice phishing ("vishing") scheme to compromise an employee's Microsoft Entra account credentials.  After obtaining unauthorized access, the attackers allegedly accessed Charter's Salesforce environment and exported substantial quantities of customer information from Charter's systems.[2]

7.    Upon information and belief, the compromised information included more than 40 million customer records, including full names, email addresses, physical addresses, telephone numbers, account plan information, customer support ticket details, and certain Customer CPNI, such as service usage and call history data.[3]

---

[1]    Lawrence Abrams, *Charter confirms data breach after ShinyHunters extortion threat*, BLEEPING COMPUTER (May 26, 2026), https://www.bleepingcomputer.com/news/security/charter-confirms-data-breach-after-shinyhunters-extortion-threat/.

[2]    *Id*.

[3]    *Id*.

8.      Additional reporting indicates that the compromised data also included records relating to Charter employees, including work email addresses, job titles, and, in some instances, home addresses.[4]

9.      Upon information and belief, the Data Breach was the direct result of Defendant's failure to implement and maintain reasonable cybersecurity safeguards, including adequate employee training, access controls, monitoring systems, and protections against social engineering attacks.

10.     As a direct and proximate result of the Data Breach, Plaintiff and Class members have suffered actual and present injuries, including but not limited to: (a) present, certainly impending, and continuing threats of identity theft crimes, fraud, scams, and other misuses of their Private Information; (b) diminution of value of their Private Information; (c) loss of benefit of the bargain (price premium damages); (d) loss of value of privacy and confidentiality of the stolen Private Information; (e) illegal sales of the compromised Private Information; (f) mitigation expenses and time spent responding to and remedying the effects of the Data Breach; (g) identity theft insurance costs; (h) "out of pocket" costs incurred due to actual identity theft; (i) credit freezes/unfreezes; (j) expense and time spent on initiating fraud alerts and contacting third parties; (k) decreased credit scores; (l) lost work time; and (m) anxiety, annoyance, and nuisance; (n) continued risk to their Private Information, which remains in Defendant's possession and is subject to further breaches so long as Defendant fails to undertake appropriate and adequate measures to protect Plaintiff's and Class members' Private Information.

---

[4]      Vilius Petkauskas, *Inside the Charter data breach: hackers leak 13M+ customer data*, CYBERNEWS (May 28, 2026), https://cybernews.com/security/charter-spectrum-data-breach-millions-exposed/.

11.    As of this filing, Defendant does not appear to have provided any notice to Plaintiff or Class members regarding the Data Breach.

12.    Plaintiff and Class members have been left in the dark concerning a significantly increased and certainly impending risk of fraud, extortion, identity theft, and other harms caused by the unauthorized disclosure of their PII—risks which may last for the rest of their lives.

13.    Consequently, Plaintiff and Class members must devote substantially more time, money, and energy to protect themselves, to the extent possible, from these crimes.

14.    Plaintiff brings claims for negligence, unjust enrichment, breach of implied contract, and declaratory judgment seeking damages and injunctive relief, including the adoption of reasonably sufficient data security practices to safeguard Plaintiff's and the Class PII in Defendant's possession in order to prevent incidents like the Data Breach from reoccurring in the future.

## II.    PARTIES

15.    Plaintiff Mariah Kent, at all relevant times, is a citizen of the State of Ohio and a resident of Licking County.

16.    Defendant Charter Communications, Inc. is a Delaware corporation with its headquarters and principal place of business located at 400 Washington Blvd, Stamford, Connecticut, 06902.  Charter operates under the Spectrum brand for residential and small business services.

## III.    JURISDICTION AND VENUE

17.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1332(d)(2)(A) because this case is a class action where the aggregate claims of all members of the proposed class are in excess of $5,000,000.00, exclusive of interest and costs, there are 100 or more members of

the proposed class, and at least one member of the proposed class is a citizen of a state different than Defendant.

18.    This Court has personal jurisdiction over Defendant because its principal place of business is in this District, and a substantial part of the events, omissions, and acts giving rise to the claims herein occurred in this District.

19.    Venue is proper under 18 U.S.C. §1391(b)(1) because Defendant's principal place of business is in this District and the acts and omissions giving rise to Plaintiff's claims occurred in and emanated from this District.

## IV.    FACTUAL ALLEGATIONS

### A.    Defendant's Business

20.    Defendant Charter Communications, Inc. is an American telecommunications and mass media company headquartered in Stamford, Connecticut.  Charter operates under the Spectrum brand for residential and small business services.

21.     Upon information and belief, Plaintiff and Class members are current and former customers and/or employees of Defendant.

22.    In the ordinary course of its business, Charter collects and maintains the PII of its current and former customers and/or employees as a condition of providing services or in connection with employment.

23.    Plaintiff and Class members have taken reasonable steps to maintain the confidentiality of their PII.  Plaintiff and Class members relied on the sophistication of Defendant to keep their PII confidential and securely maintained, to use this information for necessary purposes only, and to make only authorized disclosures of this information.  Plaintiff and Class members value the confidentiality of their PII and demand security to safeguard their PII.

24.     Defendant had a duty to adopt reasonable measures to protect the PII of Plaintiff and Class members from involuntary disclosure to third parties.  Defendant had a legal duty to keep consumer's PII safe and confidential.

25.     Defendant had obligations created by the Federal Trade Commission Act ("FTC Act"), contract, industry standards, and upon information and belief representations made to its customers and employees and thereby Plaintiff and Class members, to keep their PII confidential and to protect it from unauthorized access and disclosure.

26.     Thus, Plaintiff and Class members had the reasonable expectation that Defendant would comply with its obligations related to their PII.  Defendant owed Plaintiff and Class members a duty to provide reasonable security, consistent with industry standards and requirements, and to ensure that its computer systems, networks, and protocols adequately protected their PII.

27.      Defendant failed to comply with its obligations, resulting in the Data Breach.

**B.     The Data Breach**

28.     Upon information and belief, the Data Breach began on or about April 1, 2026, when ShinyHunters used a vishing scheme to compromise an employee's Microsoft Entra account credentials to gain access to Charter's Salesforce environment and exported substantial quantities of customer and employee information from Charter's systems.[5]

29.     The exfiltrated data included more than 40 million records, including full names, email addresses, physical addresses, telephone numbers, account plan information, customer support ticket details, and certain CPNI, such as service usage and call history data, as well as PII

---

[5]     Lawrence Abrams, *Charter confirms data breach after ShinyHunters extortion threat*, BLEEPING COMPUTER (May 26, 2026), https://www.bleepingcomputer.com/news/security/charter-confirms-data-breach-after-shinyhunters-extortion-threat/.

belonging to Defendant's current and former employees, including work email addresses, job titles, and, in some instances, home addresses.[6]

30.      Following the Data Breach, ShinyHunters publicly posted data obtained in the Data Breach on its dark web site and claimed that Charter had failed to reach an agreement with the attackers regarding their ransom demands, warning Charter to "[m]ake the right decision" and not to become "the next headline."[7]



31.      When Charter failed to meet ShinyHunters' ransom demands, the attackers released approximately 42 million records purportedly belonging to Charter's customers.

32.      Charter has since acknowledged that it was aware of the attackers' claims and stated that it was working with law enforcement and other appropriate authorities in response to the incident.[8]

---

[6]      *Id*.

[7]      *Id*.

[8]      *Id*.

33.     Despite the acknowledged risks facing Plaintiff and Class members, Defendant does not appear to have provided them with any notice regarding the Data Breach.

34.     Class members now face the threat of years of potential phishing and extortion attempts.  For example, by linking the stolen email addresses with identifiable profile details such as a user's follower count or avatar, cybercriminals can create highly convincing phishing emails, including messages that impersonate Charter support and reference specific account information to gain trust.[9]

35.     These and other threats resulting from the Data Breach will now require Plaintiffs to engage in ongoing and constant monitoring of their financial and personal records.

**C.      Defendant Acquires, Collects, and Stores Plaintiff's and the Class's PII**

36.     In the ordinary course of its business, Defendant collects, receives, stores, and maintains the sensitive PII of its customers and employees, including Plaintiff and Class members.

37.     The PII collected and maintained by Defendant includes information that is highly sensitive and valuable to cybercriminals.  Defendant derives substantial economic benefit from collecting, storing, and using this information in connection with its business operations and services.

38.     Defendant could not effectively provide its services or conduct its business without collecting and maintaining the PII of Plaintiff and Class members.

39.     By collecting, storing, and maintaining the PII of Plaintiff and Class members, Defendant assumed legal and equitable duties to safeguard and protect that information from unauthorized access, disclosure, and misuse.

---

[9]      *Id*.

8

40. Defendant knew or should have known that Plaintiff and Class members entrusted Defendant with their PII with the reasonable expectation that it would be kept confidential, used only for legitimate business purposes, and protected through reasonable and adequate cybersecurity measures.

41. Plaintiff and Class members took reasonable steps to protect the confidentiality of their PII and relied on Defendant to implement appropriate administrative, technical, and physical safeguards to secure their information.

42. The Data Breach was foreseeable and preventable. Defendant could have prevented or materially reduced the risk of the Data Breach by implementing reasonable cybersecurity measures, including adequately securing and encrypting systems and databases containing Plaintiff's and Class members' PII.

43. Defendant's failure to adequately safeguard Plaintiff's and Class members' PII was exacerbated by the well-known and increasing risk of cyberattacks, as well as repeated public warnings, industry guidance, and regulatory alerts concerning the need to protect sensitive personal information from unauthorized access and disclosure.

**D.    The Value of Private Information and Effects of Unauthorized Disclosure**

44. Charter was well aware that the protected PII which they acquire is highly sensitive and of significant value to those who would use it for wrongful, nefarious purposes.

45. Charter also knew that a breach of their computer systems, and exposure of the PII therein, would result in the increased risk of identity theft and fraud against the individuals whose PII was compromised.

46. The Private Information of individuals remains of high value to criminals, as evidenced by the prices they will pay through the dark web.

9

47.     Numerous sources cite dark web pricing for stolen identity credentials.[10] For example, Private Information can be sold at a price ranging from $40 to $200.[11] Criminals can also purchase access to entire company data breaches from $900 to $4,500.[12]

48.     Identity thieves use stolen Private Information for a variety of crimes, including credit card fraud, phone or utilities fraud, extortion, and bank/finance fraud.

49.     Among other forms of fraud, identity thieves may obtain driver's licenses, government benefits, medical services, and housing or even give false information to police.

50.     Victims of identity theft also often suffer embarrassment, extortion, or harassment in person or online, and/or experience financial losses resulting from fraudulently opened accounts or misuse of existing accounts.

51.     Moreover, the fraudulent activity resulting from the Data Breach may not come to light for years.  There may be a time lag between when harm occurs versus when it is discovered, and also between when Private Information is stolen and when it is used.  According to the U.S. Government Accountability Office ("GAO"), which conducted a study regarding data breaches:[13]

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft.  Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years.  As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.

---

[10]     Anita George, *Your personal data is for sale on the dark web.  Here's how much it costs*, Digital Trends Media Group (Oct. 16, 2019), https://www.digitaltrends.com/computing/personal-data-sold-on-the-dark-web-how-much-it-costs/.

[11]     Ben Luthi, *Here's How Much Your Personal Information Is Selling for on the Dark Web*, EXPERIAN (Jun. 30, 2025), https://www.experian.com/blogs/ask-experian/heres-how-much-your-personal-information-is-selling-for-on-the-dark-web/.

[12]     *In the Dark*, VPNOVERVIEW, https://vpnoverview.com/privacy/anonymous-browsing/in-the-dark/ (last visited May 29, 2026).

[13]     U.S. GOV'T ACCOUNTABILITY OFFICE, GAO-07-737, PERSONAL INFORMATION: DATA BREACHES ARE FREQUENT, BUT EVIDENCE OF RESULTING IDENTITY THEFT IS LIMITED; HOWEVER, THE FULL EXTENT IS UNKNOWN, AT 29 (2007), https://www.gao.gov/assets/gao-07-737.pdf.

**E.    Defendant Failed to Comply with Regulatory Requirements and Standards**

52.    Federal and state regulators have established security standards, issued guidance, and enacted laws governing the protection of sensitive personal information in order to prevent data breaches and mitigate the resulting harm to consumers and employees.

53.    Numerous federal and state laws, regulations, and industry standards require businesses that own, license, collect, store, or maintain PII to implement and maintain reasonable security procedures and practices designed to protect such information from unauthorized access, disclosure, and misuse.

54.    For example, at least twenty-four states have enacted laws specifically requiring entities maintaining the personal information of state residents to employ reasonable safeguards and security measures to protect that information.

55.    The Federal Trade Commission ("FTC") has promulgated numerous guides for businesses which highlight the importance of implementing reasonable data security practices. According to the FTC, the need for data security should be a factor in all business decision-making.

56.    In 2016, the FTC updated its publication, *Protecting Personal Information: A Guide for Business*, which established cyber-security guidelines for businesses.  The guidelines note that businesses should protect the personal customer information that they keep; properly dispose of personal information that is no longer needed; encrypt information stored on computer networks; understand their network's vulnerabilities; and implement policies to correct any security problems.[14] The guidelines also recommend that businesses use an intrusion detection system to expose a breach as soon as it occurs; monitor all incoming traffic for activity indicating

---

[14]    FED. TRADE COMM'N, PROTECTING PERSONAL INFORMATION: A GUIDE FOR BUSINESS (2016), https://www.ftc.gov/business-guidance/resources/protecting-personal-information-guide-business.

11

someone is attempting to hack the system; watch for large amounts of data being transmitted from the system; and, have a response plan ready in the event of a breach.[15]

57.    The FTC further recommends that companies not maintain PII longer than necessary for authorization of a transaction; limit access to sensitive data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures.

58.    The FTC also directs businesses to provide immediate notification to individuals impacted by a data breach so that they can take measures to protect themselves.

59.    Here, Charter has acted inexcusably by failing to provide timely notice to the individuals whose personal information was compromised in the Data Breach, despite its knowledge of the incident and its obligations to safeguard such information.

60.    Defendant's failure to employ reasonable and appropriate measures to protect against unauthorized access to consumers' Private Information constitutes an unfair act or practice prohibited by Section 5 of the FTC Act, 15 U.S.C. §45.

61.    Defendant was at all times fully aware of their obligation to protect the Private Information of consumers.  Defendant was also aware of the significant repercussions that would result from their failure to do so.

**F.    Defendant Failed to Comply with Industry Practices**

62.    Various widely recognized cybersecurity industry best practices have been established to guide organizations in protecting sensitive data and mitigating the risk of unauthorized access and data breaches.  For example, the Center for Internet Security ("CIS") has

---

[15]    *Id.*

promulgated its Critical Security Controls, which identify common and prevalent cyber threats facing organizations and recommend baseline safeguards designed to defend against such threats. Organizations that collect and maintain sensitive personal information, including Defendant, are widely recognized as being expected to follow such controls.

63. CIS also publishes CIS Benchmarks, which are widely used by auditors and security professionals as industry standards for securely configuring systems and establishing secure build practices for governance and cybersecurity programs.

64. Additional best practices include, at a minimum, implementing secure configuration of software and systems, maintaining robust access controls, timely identification, and remediation of vulnerabilities, maintaining secure network infrastructure, encrypting sensitive data both at rest and in transit, and securing application software and related environments.

65. Defendant failed to follow these widely accepted cybersecurity standards and industry best practices, thereby failing to adequately protect the PII of Plaintiff and Class members.

**G.  Plaintiff's Experience**

66. Plaintiff Mariah Kent is a customer of Defendant.

67. In order to utilize Defendant's services, Plaintiff was required to entrust Defendant with her PII. In collecting and maintaining Plaintiff's PII, Defendant undertook a duty to act reasonably in its handling of Plaintiff's PII. Defendant, however, did not take reasonable care of Plaintiff's PII, leading to its exposure and compromise as a direct result of Defendant's inadequate data security measures.

68. Plaintiff is very careful about sharing her sensitive PII. Plaintiff stores any documents containing her PII in a safe and secure location. Plaintiff has never knowingly transmitted unencrypted sensitive PII over the internet or any other unsecured source.

69.    Plaintiff provided her PII to Defendant with the reasonable expectation and mutual understanding that Defendant would use reasonable measures to protect her PII, in accordance with state and federal law, industry best practices, and the data security promises posted on Defendant's public-facing website.

70.    Since learning of the Data Breach, Plaintiff has been required to spend valuable time and effort taking steps to avoid potential scams attempting to gain access to Plaintiff's accounts and mitigate the risk of misuse of her PII.  Specifically, Plaintiff has been required to spend valuable time and effort monitoring her financial and credit monitoring accounts.  Plaintiff would not have had to engage in these time-intensive efforts but for the Data Breach.

71.    Plaintiff has suffered actual injury from having her PII exposed and/or stolen as a result of the Data Breach, including: (a) mitigation efforts to prevent scammers accessing her account; (b) mitigation efforts to prevent the misuse of her PII; (c) damages to and diminution of the value of her PII, a form of intangible property that loses value when it falls into the hands of criminals who are using that information for fraud or publishing the information for sale on the dark web; and (d) loss of privacy.

72.    Given the nature of the information compromised in the Data Breach and the propensity of criminals to use such information to commit a wide variety of crimes, Plaintiff faces a significant, present, and ongoing risk of scams, identity theft and fraud, and other identity-related fraud now and into the indefinite future.

73.    In addition, knowing that hackers have gained access to her PII and that this information likely has been and will be used in the future for scams, identity theft, fraud, and other nefarious purposes has caused Plaintiff to experience significant frustration, anxiety, worry, stress, and fear.

14

### H.      Plaintiff and Class Members Suffered Damages

74.      Given the sensitivity of the Private Information involved in this Data Breach, Plaintiff and Class members have all suffered damages and will face a substantial risk of additional injuries for years to come, if not the rest of their lives.  Defendant has done nothing to compensate Plaintiff or Class members for many of the injuries they have already suffered.  Defendant has not demonstrated any efforts to prevent additional harm from befalling Plaintiff and Class members as a result of the Data Breach.

75.      Plaintiff and Class members have been damaged by the compromise of their PII in the Data Breach.

76.      Since learning of the Data Breach, Plaintiff has spent time dealing with the impact of the Data Breach, valuable time Plaintiff otherwise would have spent on other activities, including but not limited to work and/or recreation.

77.      Due to the Data Breach, Plaintiff anticipates spending considerable time and money on an ongoing basis to try to mitigate and address harms caused by the Data Breach.  This includes changing passwords, cancelling credit and debit cards, and monitoring accounts for fraudulent activity.

78.      Plaintiff's and Class members' Private Information was compromised as a direct and proximate result of the Data Breach.

79.      As a direct and proximate result of Defendant's conduct, Plaintiff and Class members have been placed at a present, imminent, immediate, and continuing increased risk of harm from fraud and identity theft.

80.      As a direct and proximate result of Defendant's conduct, Plaintiff and Class members have been forced to spend time dealing with the effects of the Data Breach.

15

81.    Plaintiff and Class members face substantial risk of out-of-pocket fraud losses such as loans opened in their names, medical services billed in their names, tax return fraud, utility bills opened in their names, credit card fraud, and similar identity theft.

82.    Plaintiff and Class members face substantial risk of being targeted for future phishing, data intrusion, and other illegal schemes based on Plaintiff's and Class members' Private Information as potential fraudsters could use that information to more effectively target such schemes to Plaintiff and Class members.

83.    Plaintiff and Class members may also incur out-of-pocket costs for protective measures such as credit monitoring fees, credit report fees, credit freeze fees, and similar costs directly or indirectly related to the Data Breach.

84.    Plaintiff and Class members also suffered a loss of value of their Private Information when it was acquired by cyber thieves in the Data Breach.  Numerous courts have recognized the propriety of loss of value damages in similar cases.

85.    Plaintiff and Class members were also damaged via benefit-of-the-bargain damages.  Plaintiff and Class members overpaid for a service that was intended to be accompanied by adequate data security that complied with industry standards but was not.  Part of the price Plaintiff and Class members paid to Defendant was intended to be used by Defendant to fund adequate security of its computer system(s) and Plaintiff's and Class members' Private Information.  Thus, Plaintiff and Class members did not get what they paid for and agreed to.

86.    Plaintiff and Class members have spent and will continue to spend significant amounts of time monitoring their accounts and sensitive information for misuse.

87.    Plaintiff and Class members have suffered or will suffer actual injury as a direct result of the Data Breach.  Many victims suffered ascertainable losses in the form of out-of-pocket

16

expenses and the value of their time reasonably incurred to remedy or mitigate the effects of the

Data Breach relating to:

a. Reviewing and monitoring sensitive accounts and finding fraudulent insurance claims, loans, and/or government benefits claims;

b. Purchasing credit monitoring and identity theft prevention;

c. Placing "freezes" and "alerts" with reporting agencies;

d. Spending time on the phone with or at financial institutions, healthcare providers, and/or government agencies to dispute unauthorized and fraudulent activity in their name;

e. Contacting financial institutions and closing or modifying financial accounts; and

f. Closely reviewing and monitoring bank accounts, and credit reports for unauthorized activity for years to come.

88. Moreover, Plaintiff and Class members have an interest in ensuring that their Private Information, which is believed to remain in the possession of Defendant, is protected from further breaches by the implementation of security measures and safeguards, including but not limited to, making sure that the storage of data or documents containing Private Information is not accessible online and that access to such data is password protected.

89. Further, as a result of Defendant's conduct, Plaintiff and Class members are forced to live with the anxiety that their Private Information—which contains the most intimate details about a person's life—may be disclosed to the entire world, thereby subjecting them to embarrassment and depriving them of any right to privacy whatsoever.

90. As a direct and proximate result of Defendant's actions and inactions, Plaintiff and Class members have suffered anxiety, emotional distress, loss of time, loss of privacy, and are at an increased risk of future harm.

17

## V.    CLASS ACTION ALLEGATIONS

91.    Plaintiff brings this nationwide class action on behalf of herself, and all others similarly situated pursuant to FED. R. CIV. P. 23(b)(2), 23(b)(3), and 23(c)(4).

92.    The Class that Plaintiff seeks to represent is defined as follows:

All individuals residing in the United States and its territories whose Private Information was accessed and/or acquired by an unauthorized party as a result of the Data Breach (the "Class").

93.    Excluded from the proposed Class is Defendant, its subsidiaries and affiliates, their officers, directors, and members of their officers' and directors' immediate families, any entity in which Defendant has a controlling interest, the legal representatives, heirs, successors, or assigns of any such excluded party, the judicial officer(s) to whom this action is assigned, and the members of those judicial officers' immediate families.

94.    Plaintiff reserves the right to modify or amend the definition of the proposed Class prior to moving for class certification.

95.    **Numerosity.**  The Class described above is so numerous that joinder of all individual members in one action would be impracticable.  The disposition of the individual claims of the respective Class members through this class action will benefit both the parties and this Court.  The exact size of the Class and the identities of the individual members thereof are ascertainable through Defendant's records, including, but not limited to, the files implicated in the Data Breach.  Upon information and belief, the Class, at minimum, comprises well over a million individuals.

96.    **Commonality.**  This action involves questions of law and fact that are common to Plaintiff and the Class members.  Such common questions include, but are not limited to:

- whether and to what extent Defendant had a duty to protect the PII of Plaintiff and Class members;

- whether Defendant was negligent in collecting and storing Plaintiff's and Class members' PII;

- whether Defendant had duties not to disclose the PII of Plaintiff and Class members to unauthorized third parties;

- whether Defendant took reasonable steps and measures to safeguard Plaintiff's and Class members' PII;

- whether Defendant failed to adequately safeguard the PII of Plaintiff and Class members;

- whether Defendant breached its duties to exercise reasonable care in handling Plaintiff's and Class members' PII;

- whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

- whether Plaintiff and Class members are entitled to damages as a result of Defendant's wrongful conduct; and

- whether Plaintiff and Class members are entitled to injunctive relief to redress the imminent and currently ongoing harm faced as a result of the Data Breach.

97.    **Typicality.** Plaintiff's claims are typical of the claims of the Class members.  The claims of Plaintiff and Class members are based on the same legal theories and arise from the same failure by Defendant to safeguard their PII.  Plaintiff and Class members entrusted Defendant with their PII, and it was subsequently accessed by an unauthorized third party.

98.    **Adequacy of Representation.**    Plaintiff is an adequate representative of the proposed Class because Plaintiff's interests do not conflict with the interests of the other Class members Plaintiff seeks to represent; Plaintiff has retained counsel competent and experienced in complex class action litigation; Plaintiff intends to prosecute this action vigorously; and Plaintiff's counsel has adequate financial means to vigorously pursue this action and ensure the interests of the proposed Class will not be harmed. Furthermore, the interests of the Class members will be fairly and adequately protected and represented by Plaintiff and Plaintiff's counsel.

99.    **Superiority.**    This class action is appropriate for certification because class proceedings are superior to other available methods for the fair and efficient adjudication of this controversy and joinder of all members of the proposed Class is impracticable.  This proposed class action presents fewer management difficulties than individual litigation, and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.  Class treatment will create economies of time, effort, and expense and promote uniform decision-making.

100.    **Predominance.**    Common questions of law and fact predominate over any questions affecting only individual Class members.  Similar or identical violations, business practices, and injuries are involved.  Individual questions, if any, pale by comparison, in both quality and quantity, to the numerous common questions that dominate this action.  For example, Defendant's liability and the fact of damages is common to Plaintiff and each member of the proposed Class.  If Defendant breached its duties and released Plaintiff's and Class members' PII, then Plaintiff and each Class member suffered damages by that conduct.

101.    **Ascertainability.**    Members of the proposed Class are ascertainable.  Class membership is defined using objective criteria, and Class members may be readily identified through Defendant's books and records.

## VI.    CAUSES OF ACTION

**FIRST CLAIM FOR RELIEF**
**NEGLIGENCE**
**(On Behalf of Plaintiff and the Class)**

102.    Plaintiff restates and realleges all preceding allegations above as if fully set forth herein.

103.    Defendant owed a duty under common law to Plaintiff and Class members to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting

their PII in Defendant's possession from being compromised, lost, stolen, accessed, and misused by unauthorized persons.

104. Specifically, this duty included, among other things: (a) designing, maintaining, and testing Defendant's cloud-based systems to ensure that Plaintiff's and Class members' PII in Defendant's possession was adequately secured and protected; (b) implementing processes that would detect a breach of their security system in a timely manner; (c) timely acting upon warnings and alerts, including those generated by their own security systems, regarding intrusions to their networks; and (d) maintaining data security measures consistent with industry standards.

105. Charter's duty to use reasonable care arose from several sources, including, but not limited to, those described below.

106. Defendant had a common law duty to prevent foreseeable harm to others. This duty existed because Plaintiff and Class members were the foreseeable and probable victims of any inadequate security practices on the part of Defendant. By collecting and storing valuable PII that is routinely targeted by criminals for unauthorized access, Charter was obligated to act with reasonable care to protect against these foreseeable threats.

107. Defendant also owed a common law duty because their conduct created a foreseeable risk of harm to Plaintiff and Class members. Charter's conduct included their failure to adequately restrict access to their computer networks and/or servers that held individuals' PII.

108. Defendant also knew or should have known of the inherent risk in collecting and storing massive amounts of PII, the importance of implementing adequate data security measures to protect that PII, and the frequency of cyber-attacks, such as the Data Breach.

109. Defendant breached the duties owed to Plaintiff and Class members and thus were negligent. Charter breached these duties by, among other things: (a) mismanaging their system

21

and failing to identify reasonably foreseeable internal and external risks to the security, confidentiality, and integrity of customer information that resulted in the unauthorized access and compromise of PII; (b) mishandling their data security by failing to assess the sufficiency of their safeguards in place to control these risks; (c) failing to design and implement information safeguards to control these risks; (d) failing to adequately test and monitor the effectiveness of the safeguards' key controls, systems, and procedures; (e) failing to evaluate and adjust their information security program in light of the circumstances alleged herein; (f) failing to detect the breach at the time it began or within a reasonable time thereafter; (g) failing to follow their own privacy policies provided to customers; and (h) failing to adequately train and supervise employees and third-party vendors with access or credentials to systems and databases containing sensitive PII.

110. But for Charter's wrongful and negligent breach of their duties owed to Plaintiff and Class members, their PII would not have been accessed, exfiltrated, and compromised by cybercriminals.

111. As a direct and proximate result of Defendant's negligence, Plaintiff and Class members have suffered injuries including:

    a.    theft of their PII;

    b.    costs associated with requesting credit freezes;

    c.    costs associated with the detection and prevention of identity theft;

    d.    costs associated with purchasing credit monitoring and identity theft protection services;

    e.    lowered credit scores resulting from credit inquiries following fraudulent activities;

    f.    costs associated with time spent and the loss of productivity from taking time to address and attempt to ameliorate, mitigate, and deal with the actual and future consequences of the Data Breach;

g.      the imminent and certainly impending injury flowing from potential fraud and identity theft posed by their PII being placed in the hands of criminals;

h.      damages to and diminution in value of their PII entrusted to Charter with the mutual understanding that Defendant would safeguard Plaintiff's and Class members' data against theft and not allow access and misuse of their data by others; and

i.      continued risk of exposure to hackers and thieves of their PII, which remains in Defendant's possession and is subject to further breaches so long as Defendant fails to undertake appropriate and adequate measures to protect Plaintiff and Class members.

112.    As a direct and proximate result of Charter's negligence, including their gross negligence, Plaintiff and Class members are entitled to damages, including compensatory, punitive, and/or nominal damages, in an amount to be proven at trial.

**SECOND CLAIM FOR RELIEF**
**UNJUST ENRICHMENT**
**(On Behalf of Plaintiff and the Class)**

113.    Plaintiff restates and realleges all preceding allegations above as if fully set forth herein.

114.    Plaintiff and Class members conferred a monetary benefit on Charter by providing them with their valuable PII.

115.    Charter knew that Plaintiff and Class members conferred a benefit upon them and accepted and retained that benefit by accepting and retaining the PII entrusted to them.  Defendant profited from Plaintiff's and Class members' PII and use of Plaintiff' and Class members' PII for business purposes.

116.    Defendant failed to secure Plaintiff's and Class members' PII and, therefore, did not fully compensate Plaintiff or Class members for the value that their PII provided.

117.    Charter acquired the PII through inequitable record retention as they failed to disclose the inadequate data security practices previously alleged.

23

118.    If Plaintiff and Class members had known Defendant would not use adequate data security practices, procedures, and protocols to adequately monitor, supervise, and secure their PII, they would not have agreed to the entrustment of their PII to Defendant.

119.    Under the circumstances, it would be unjust for Charter to be permitted to retain any of the benefits that Plaintiff and Class members conferred upon them.

120.    Plaintiff and Class members are without an adequate remedy at law.

121.    As a direct and proximate result of Defendant's conduct, Plaintiff and Class members have suffered injuries, including those identified above.

122.    Plaintiff and Class members are entitled to restitution and/or damages from Charter and/or an order proportionally disgorging all profits, benefits, and other compensation obtained by Defendant from their wrongful conduct, as well as return of their sensitive PII and/or confirmation that it is secure.  This can be accomplished by establishing a constructive trust from which the Plaintiff and Class members may seek restitution or compensation.

**THIRD CLAIM FOR RELIEF**
**BREACH OF IMPLIED CONTRACT**
**(On Behalf of Plaintiff and the Class)**

123.    Plaintiff restates and realleges all preceding allegations above as if fully set forth herein.

124.    Plaintiff and the Class entrusted their Private Information to Defendant as a condition of purchasing products and obtaining services.  In so doing, Plaintiff and the Class entered into implied contracts with Defendant, pursuant to which Defendant agreed to safeguard and protect Plaintiff's and Class members' Private Information, to keep such information secure and confidential, and to timely and accurately notify Plaintiff and the Class if their data had been breached, compromised, or stolen.

125.    At the time Defendant acquired the Private Information of Plaintiffs and the Class, there was a meeting of the minds and a mutual understanding that Defendant would safeguard the Private Information and not take unjustified risks when storing the Private Information.

126.    Implicit in the agreements between Plaintiff and Class members and Defendant was Defendant's obligation to: (a) use Plaintiff and Class members' Private Information for business purposes only; (b) take reasonable steps to safeguard their Private Information; (c) prevent unauthorized access and disclosure of the Private Information; (d) provide Plaintiff and Class members with prompt and sufficient notice of any and all unauthorized access and/or theft of their Private Information; and (e) retain the Private Information only under conditions that kept such information secure and confidential.

127.    Plaintiff and the Class would not have entrusted their Private Information to Defendant had they known that Defendant would not encrypt sensitive data elements, or delete the Private Information that Defendant no longer had a reasonable need to maintain.

128.    Plaintiff and the Class fully performed their obligations under the implied contracts with Defendant.

129.    Defendant breached the implied contracts they made with Plaintiff and the Class by failing to safeguard and protect their Private Information, by failing to delete the information of Plaintiff and the Class once the relationship ended, and by failing to provide timely and accurate notice to them that their Private Information had been compromised and stolen in the Data Breach.

130.    As a direct and proximate result of Defendant's above-described breach of implied contract, Plaintiff and Class members have already suffered, and will continue to suffer, damages including, inter alia: (i) invasion of privacy; (ii) theft of their Private Information; (iii) actual and attempted misuse of the Private Information stolen in the Data Breach, including an increase in

25

spam and phishing calls, texts, and emails; (iv) lost time, money, and opportunity costs associated with attempts to mitigate the actual consequences of the Data Breach; (v) lost or diminished value of their Private Information; (vi) loss of the benefit of their bargain; (vii) nominal damages; and (viii) the increased and continuing risk to their Private Information, which: (a) remains unencrypted and vulnerable to unauthorized access and abuse; and (b) remains backed up in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the Private Information.

131.    Plaintiff and the Class have suffered (and will continue to suffer): an ongoing and imminent threat of future identity theft crimes, fraud, and abuse, resulting in monetary loss and economic harm; actual and attempted identity theft crimes, fraud, and abuse, resulting in monetary loss and economic harm; loss of the confidentiality of their stolen Private Information; the illegal sale of the compromised data on the dark web; expenses and/or time spent on credit monitoring and identity theft insurance; time spent scrutinizing bank statements, credit card statements, and credit reports; expenses and/or time spent initiating fraud alerts, lost work time; and other economic and non-economic harm.

132.    As a direct and proximate result of Defendant's above-described breach of implied contract, Plaintiff and the Class are entitled to recover actual, consequential, and nominal damages to be determined at trial.

**FOURTH CLAIM FOR RELIEF**
**DECLARATORY JUDGMENT**
**(On Behalf of Plaintiff and the Class)**

133.    Plaintiff restates and realleges all preceding allegations above as if fully set forth herein.

134.    Under the Declaratory Judgment Act, 28 U.S.C. §§2201 et seq., this Court is authorized to enter a judgment declaring the rights and legal relations of the parties and grant

26

further necessary relief. Furthermore, the Court has broad authority to restrain acts, such as here, that are tortious and violate the terms of the federal and state statutes described in this Complaint.

135. An actual controversy has arisen in the wake of the Data Breach regarding Plaintiff's and Class members' PII and whether Defendant is currently maintaining data security measures adequate to protect Plaintiff and Class members from further data breaches that compromise their PII. Plaintiff alleges that Defendant's data security measures remain inadequate. Furthermore, Plaintiff continues to suffer injury as a result of the compromise of their PII and remain at imminent risk that further compromises of their PII will occur in future.

136. Pursuant to its authority under the Declaratory Judgment Act, this Court should enter a judgment declaring, among other things, the following:

   a    Defendant owes a legal duty to secure PII and to timely notify consumers of a data breach under the common law, Section 5 of the FTC Act; and

   b    Defendant continues to breach this legal duty by failing to employ reasonable measures to secure PII.

137. If an injunction is not issued, Plaintiff will suffer irreparable injury, and lack an adequate legal remedy, in the event of another data breach at Defendant. The risk of another such breach is real, immediate, and substantial. If another breach at Defendant occurs, Plaintiff will not have an adequate remedy at law because many of the resulting injuries are not readily quantified and he will be forced to bring multiple lawsuits to rectify the same conduct.

138. The hardship to Plaintiff if an injunction is not issued exceeds the hardship to Defendant if an injunction is issued. Plaintiff will likely be subjected to substantial identity theft and other damage. On the other hand, the cost to Defendant of complying with an injunction by employing reasonable prospective data security measures is relatively minimal, and Defendant has a pre-existing legal obligation to employ such measures.

27

139.    Issuance of the requested injunction will not disserve the public interest.    In contrast, such an injunction would benefit the public by preventing another data breach at Defendant, thus eliminating the additional injuries that would result to Plaintiff and other individuals whose confidential information would be further compromised.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself and all others similarly situated, pray for relief as follows:

A.    For an order certifying the proposed Class under FED. R. CIV. P. 23, and naming Plaintiff as representatives of the Class and Plaintiff' attorneys as Class Counsel to represent the Class;

B.    For an order finding in favor of Plaintiff and the Class on all counts asserted herein;

C.    For damages in an amount to be determined by the trier of fact;

D.    For an order of restitution and all other forms of equitable monetary relief;

E.    Declaratory and injunctive relief as described herein;

F.    Awarding Plaintiff reasonable attorneys' fees, costs, and expenses;

G.    Awarding pre- and post-judgment interest on any amounts awarded; and

H.    Awarding such other and further relief as may be just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a jury trial for all claims so triable.

Dated: June 1, 2026                         Respectfully submitted,

/s/ Joseph P. Guglielmo
Joseph P. Guglielmo (CT 27481)
The Helmsley Building
230 Park Avenue, 24th Floor
New York, NY 10169
Telephone: (212) 223-6444

28

Facsimile:  (212) 223-6334
jguglielmo@scott-scott.com

Linda P. Nussbaum (*pro hac vice forthcoming*)
**NUSSBAUM LAW GROUP, P.C.**
1225 Franklin Avenue, Suite 325
Garden City, NY 11530
Telephone: (917) 438-9189
Email: lnussbaum@nussbaumpc.com

Michael E. Criden (*pro hac vice forthcoming*)
Lindsey C. Grossman  (*pro hac vice forthcoming*)
**CRIDEN & LOVE, P.A.**
2020 Salzedo Street, Suite 302
Coral Gables, Florida 33134
Telephone: (305) 357-9000
Email: mcriden@cridenlove.com
Email: lgrossman@cridenlove.com

*Attorneys for Plaintiff and the Proposed Class*